JL

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Calvin Clinton Ward,<br>            Plaintiff,<br>v.<br>NaphCare Incorporated,<br>            Defendant. | No.   CV-24-03676-PHX-JAT (JZB)<br><br>**ORDER** |

On December 13, 2024, Plaintiff Calvin Clinton Ward, who is confined in the Arizona State Prison Complex (ASPC)-Eyman, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed In Forma Pauperis. In a January 16, 2025 Order, the Court granted the Application to Proceed and dismissed the Complaint because Plaintiff had failed to state a claim. The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

After requesting and receiving an extension of time, on March 10, 2025, Plaintiff filed a Motion to Exceed the Page Limit for Amended Complaint (Doc. 10) and lodged a proposed First Amended Complaint. The Court will grant the Motion, direct the Clerk of Court to file the lodged proposed First Amended Complaint, order Defendant Miller to answer a portion of the First Amended Complaint, and dismiss Defendant NaphCare without prejudice.

. . . .

. . . .

TERMPSREF

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

. . . .

## II.  First Amended Complaint

In his single-count First Amended Complaint, Plaintiff sues NaphCare and Nurse Practitioner (NP) Patricia Miller. Plaintiff asserts a claim regarding his medical care. He seeks injunctive and monetary relief.

Plaintiff alleges the following:

On May 16, 2024, Plaintiff submitted a health needs requests (HNR) stating that he had several masses on his stomach that were extremely painful. On June 3, 2024, Plaintiff submitted an HNR stating that he had several "masses/lumps" on his torso that were extremely painful, he had been waiting almost three weeks to see a provider, and the "situation ha[d] gotten much worse." On June 4, 2024, Plaintiff saw Registered Nurse (RN) Felicia O'Gara, who examined Plaintiff and noted "multiple size lumps" on Plaintiff's abdomen with pain on palpation. RN O'Gara's notes indicated her plan as "scheduled for provider."

On June 11, 2024, Plaintiff submitted an HNR stating that he had been waiting more than three weeks to be seen about the painful masses that were "all over" his upper torso and complaining of constant 8/10 pain. The next day, Plaintiff saw Defendant Miller. Defendant Miller noted that Plaintiff reported he had multiple lesions[1] removed from his upper arm a couple of years earlier and that masses on his abdomen and chest had rapidly increased in number and size within the last six months. Miller documented masses in all quadrants of Plaintiff's abdomen and a mass at the left anterior chest. Defendant Miller's notes indicated her plan was to request a dermatology consultation to assess the masses for evaluation and treatment and an ultrasound of Plaintiff's chest and abdomen. Miller denied Plaintiff pain medication. That same day, Plaintiff was sent to the emergency room to be evaluated for "crepitus," which was negative.[2] Apparently the hospital prescribed

---

[1] Plaintiff elsewhere alleges that Miller identified the lesions as painful lipomas.

[2] According to the Cleveland Clinic, crepitus, a crackling sound that happens when the skin in an affected area is pressed, is a symptom of subcutaneous emphysema, which can be caused by infections, such as necrotizing fasciitis. *See* https://my.clevelandclinic.org/health/diseases/subcutaneous-emphysema [https://perma.cc/VTZ5-9WJF]

1 unidentified medication.

2 On June 18, 2024, Plaintiff saw Defendant Miller for follow-up after the emergency
3 room visit. Miller's plan was to continue medications as ordered, an ultrasound of
4 Plaintiff's chest and abdomen, and a dermatology consultation. Miller again denied
5 Plaintiff pain medication. Later that day, Plaintiff received a notification on his tablet
6 stating, "General surgery cancelled," with no other information.

7 On June 20, 2024, Plaintiff submitted an informal complaint stating that he had
8 numerous masses on his torso that were causing him constant 8/10 pain. Plaintiff wrote
9 that the masses were "getting bigger fast," the pain was affecting his "everyday life," and
10 sleep was almost impossible. He did not receive a response to the informal complaint. On
11 July 16, 2024, Plaintiff submitted a formal grievance repeating the assertions in his
12 informal complaint. On August 6, 2024, Plaintiff received a response to the formal
13 grievance stating that Plaintiff had been scheduled for an ultrasound and then dermatology,
14 and his treatment plan would be determined from the results of the test and the specialist
15 visit. The next day, Plaintiff submitted a formal grievance appeal describing his HNRs,
16 informal complaint, and formal grievance and stating that the pain was "very intense" and
17 had "made its way into [his] hernia."

18 On August 23, 2024, Plaintiff submitted an emergency HNR complaining of
19 constant 10/10 pain due to the masses on his torso, even in his sleep, and stating that it hurt
20 just to breathe. On August 28, 2024, Plaintiff saw Defendant Miller, told her that he was
21 in extreme pain, and asked her whether he had cancer. Defendant Miller told Plaintiff he
22 was having an ultrasound that day. Later the same day, Plaintiff underwent the ultrasound,
23 which revealed a 1.9 cm x 1.5 cm x 0.8 cm well-defined hypoechoic superficial solid lesion
24 and a well-defined 2.8 cm x 2.3 cm x 0.6 cm hypoechoic superficial solid lesion. Plaintiff
25 immediately requested a copy of the ultrasound results, but his request was denied, and he
26 was told he would be scheduled with the provider.

27 On September 4, 2024, Plaintiff had a virtual chronic care visit with Physician's
28 Assistant (PA) Adrian Kelley. PA Kelley ordered meloxicam and acetaminophen for 20

days for pain and a CT of Plaintiff's abdomen and pelvis to assess the extent of the abdominal lesions. PA Kelley also noted, "Consider Dermatology consult for possible biopsy of abdominal lesions."

On September 5, 2024, Plaintiff's grievance appeal was denied. The response stated that Plaintiff had seen a nurse on June 4, 2024 and a provider on June 12 and 25, 2024, and an ultrasound had been ordered on June 25, 2024.[3]

Plaintiff continued to suffer pain, even with the meloxicam and acetaminophen. On September 9, 2024, Plaintiff saw Defendant Miller for follow-up of the ultrasound results. The plan was to order a CT with contrast and a dermatology consultation. The dermatology consultation was ordered, but NaphCare "immediately" cancelled it, without any explanation.

On September 28 and October 3, 2024, Plaintiff submitted HNRs reporting extreme pain and that the pain medication was not helping. On October 8, 2024, Plaintiff saw Defendant Miller. Miller noted that Plaintiff had a CT scan pending and that he reported his pain was increasing, especially at the right testicle. Miller noted that the abdominal ultrasound showed lesions at the "areas of interest," and the assessment was testicular pain for greater than two weeks, possible orchitis, "acute on chronic pain," and solid lesions on torso. Miller noted that Plaintiff stated he did not want to take any additional medication for pain, but according to Plaintiff, he told Miller that the medications previously prescribed did not relieve his pain, and he did not want to take any more ineffective medication. The plan was a urology consultation and a CT scan with contrast.

On October 16, 2024, Plaintiff underwent a CT scan of his abdomen and pelvis, which, according to Plaintiff, was only to check his hernia repair. The CT scan showed no recurrent right inguinal defect, a small fatty bulge of the left inguinal canal, and no acute obstructive or inflammatory process.

On October 27, 2024, Plaintiff submitted an HNR complaining of constant 10/10

---

[3] Plaintiff's allegations do not reflect a June 25, 2024 provider visit or that an ultrasound was ordered on June 25, 2024.

**TERMPSREF**

- 5 -

pain due to the lesions on his torso and that "[s]omething [was] also going on with [his] hernia." Plaintiff asked why the ultrasound report "only show[ed] 2 of the 6 lesions were found" and asked what the plan was following the CT scan. On November 7, 2024, Plaintiff saw Defendant Miller for follow-up following the CT scan. Miller noted that Plaintiff had a dermatology consultation scheduled and had undergone an ultrasound, which showed lesions on his torso. Miller noted that she reviewed the results of the CT with Plaintiff, and that the CT report stated his spleen was normal, although Plaintiff's spleen had been removed years before. Miller again noted that Plaintiff stated he did not want to take any additional medication for pain, but according to Plaintiff, he told Defendant Miller that the pain medications were ineffective, and Miller refused to prescribe any other medications. The plan stated, "Urology consult ordered and scheduled. Dermatology consult. Provider to request review of imaging for accuracy. Continue medications as ordered."

On November 12, 2024, Plaintiff submitted an HNR asking to see Defendant Miller to discuss why the numerous lesions did not "show" on the CT scan and why the CT report showed that he had a spleen when it had been removed decades earlier. Plaintiff also asked why the September 2024 appointment with the dermatologist was cancelled. On November 19, 2024, Plaintiff saw Defendant Miller. Miller noted that Plaintiff complained of continuous pain and reported that the nodule at the epigastric region was very painful, especially with palpitation. Miller noted that Plaintiff reported the nodules at the right lower quadrant were very painful and radiated into his groin, right testicle, and right leg. Plaintiff denied discharge or abnormal urine. Miller's plan stated, "Urology consult ordered and scheduled, general surgical consult, CT scan without contrast; abdomen and right groin, continue medications as ordered." The same day, Miller entered a "Quick Note" stating that Plaintiff complained of constant severe pain due to lipomas that had been progressively increasing in size since April 2024 and that pain medication did not resolve his symptoms. Miller noted that typically, benign lipomas are not painful, but that Plaintiff had "painful lipomas" removed from his left arm in the past, and that she would requestion

a general surgery consultation. On November 25, 2024, NaphCare denied Defendant Miller's request for a general surgery consultation.

On November 27, 2024, Plaintiff submitted an informal complaint regarding NaphCare's denial of the recommended consultations for dermatology and general surgery. Plaintiff also wrote that Defendant Miller delayed requests for specialist consultations, refused to follow up on Plaintiff's plan of care, and refused to prescribe effective pain management. Plaintiff asserted that the "established standard of care" was to surgically remove the painful lesions, and "the practitioners['] knowledge of the standard of care, and refusal to meet the standard of care," implied deliberate indifference.

The next day, Plaintiff was transferred to ASPC-Eyman; it appears Plaintiff did not receive a response to his informal complaint before he was transferred. RN Thomas Thorup "rubber-stamped" Plaintiff's intake, noting that Plaintiff's medical records were not shipped, and that Plaintiff denied any unmet medical needs.

On December 2, 2024, Plaintiff saw NP Siji Thomas for chronic care and to follow up on the lesions on his upper and lower torso. NP Thomas noted that Plaintiff first reported small lesions in March or April 2024 and that the lesions had "got[ten] big so fast [and] started hurting." NP Thomas noted the CT scan was inconclusive. She also noted that Plaintiff was concerned about lymphoma, and that she would consider a PET scan "due to concerning physical exam." NP Thomas told Plaintiff that she would order an additional CT scan and consultations for urology, pain management, and general surgery. On December 22, 2024, Plaintiff saw RN Missy Chandler for a routine annual physical and "PPD." RN Chandler "refused to document or discuss" the lesions on Plaintiff's torso.

On January 17, 2025, Plaintiff underwent a PET CT TUMOR IMAGING, which found no evidence of malignant disease. On January 23, 2025, Plaintiff was sent out for a urology consultation, but copies of Plaintiff's CT or PET scan reports were not provided to the urologist. The urologist recommended a scrotal ultrasound, an appointment with general surgery, a CT/PET scan, and follow-up in four to six weeks.

On January 25, 2025, Plaintiff submitted an HNR asking to see a provider to discuss

1  the results of his last two CT scans and a treatment plan. Plaintiff stated he was still in
2  extreme pain and again asked why Defendant Miller's requests for general surgery and
3  dermatology consultations were denied. That same day, Plaintiff had a virtual visit with
4  NP Denise Matthews for follow-up from the urology consultation. NP Matthews noted
5  that an appointment with general surgery would be scheduled for Plaintiff's abdominal
6  pain. She noted that she discussed the CT results with Plaintiff, and he had no questions
7  or acute concerns. Her plan stated, "Scheduled testicular ultrasound[.] Awaiting urology
8  dictated notes to schedule [follow-up] and general surgery referral."

9  On January 31, 2025, Plaintiff submitted an HNR stating that a week earlier, he had
10 requested a review of his medical records, including the results of all ultrasounds and CT
11 scans; all HNR responses from April 1, 2024 to that date; all referral requests, responses,
12 and denials from April 1, 2024 to that date; and all requests for pain medication by nurses
13 and providers and all responses to and denials of the requests. NaphCare refused to produce
14 the records.

**III.   Discussion**

   **A.      Defendant NaphCare**

To state a claim under § 1983 against a private entity performing a traditional public function, such as providing medical care to prisoners, Plaintiff must meet the test articulated in *Monell v. New York Department of Social Services*. 436 U.S. 658, 690–94 (1978). *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities acting under color of state law). NaphCare can only be held liable under § 1983 for its employees' civil rights deprivations if Plaintiff can show an official policy or custom caused the constitutional violation. *Monell*, 436 U.S. at 694. To state a claim against NaphCare, Plaintiff must allege facts that: (1) he was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to Plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110 (9th Cir. 2001).

Plaintiff alleges that NaphCare has a policy, custom, or practice of 1) denying the recommendations of its onsite providers, including recommendations for pain management, surgery, and dermatology specialist referrals; 2) developing a "U.M. Review" for specialist consultations and surgery approvals that "limits" consultations for non-medical reasons, "and choosing profit over inmates['] health"; 3) authorizing nursing staff to make treatment decisions outside the scope of their license, or for which they are not qualified; 4) denying, delaying, or ignoring Plaintiff's requests for treatment; and 5) failing to supervise and train staff to follow up on ineffective plans of care.

A policy is "a deliberate choice to follow a course of action" made by an entity "responsible for establishing final policy with respect to the subject matter in question." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). A policy can be one of action or inaction. *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Although one or two incidents are insufficient to establish a custom or practice, the Ninth Circuit has not established the number of similar incidents sufficient to constitute a custom or policy. *See Oyenik v. Corizon Health Inc.*, No. 15-16850, 2017 WL 2628901, at *2 (9th Cir. June 19, 2017) (a reasonable jury could conclude that at least a dozen instances of defendant Corizon denying or delaying consultations and radiation treatment for cancer patient over a year amounted to a custom or practice of deliberate indifference) (citing *Oviatt*, 954 F.2d at 1478). But "[t]here is no case law indicating that a custom cannot be inferred from a pattern of behavior toward a single individual." *Id.*

Plaintiff's allegations do not support that NaphCare had a custom or practice of denying, delaying, or ignoring his requests for treatment. Plaintiff first submitted an HNR regarding the masses on his abdomen on May 16, 2024 but did not see a nurse until June 4, 2024. Plaintiff saw Defendant Miller on June 12, 2024. Between June 12, 2024 and January 25, 2025, Plaintiff was sent to the emergency room for evaluation of the masses,

had at least ten provider visits regarding the abdominal masses and his related pain, underwent an abdominal ultrasound, two CT scans, and a PET scan, and saw a urologist. These facts demonstrate that NaphCare responded to Plaintiff's serious medical needs.

Plaintiff's allegations also do not support that NaphCare denied treatment for non-medical reasons. Plaintiff alleges that on June 18, 2024, he received a notification on his tablet stating, "General surgery cancelled," but he provides no other facts regarding what had been scheduled and for what purpose. Plaintiff alleges that NaphCare cancelled the original dermatology consultation in September 2024, without any explanation. But the lack of explanation does not necessarily support an inference that the cancellation was for non-medical reasons. The dermatology consultation apparently was rescheduled sometime before Plaintiff's November 7, 2024 visit with Defendant Miller, although it is unclear from Plaintiff's allegations when the consultation occurred. Similarly, Plaintiff alleges that after his November 19, 2024 visit with Defendant Miller, Miller requested a general surgery consultation, which NaphCare denied on November 25, 2024. Plaintiff alleges no facts to support that the consultation was denied for non-medical reasons.

Plaintiff alleges that NaphCare authorized nursing staff to make treatment decisions outside the scope of their license, or for which they are not qualified, but he does not identify any treatment decision any nurse made that was outside of the scope of the nurse's license or for which the nurse was not qualified.

Finally, with respect to Plaintiff's claim that NaphCare failed to supervise and train staff to follow up on ineffective plans of care, to prevail on a *Monell* claim based on failure to train, Plaintiff must do more than baldly allege that NaphCare failed to supervise and train its employees. Plainitiff must allege facts to support that the alleged failure amounted to deliberate indifference. *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998). That is, Plaintiff must allege facts to support that not only was particular training or supervision inadequate, but also that such inadequacy was the result of "a 'deliberate' or 'conscious' choice" on the part of the defendant. *Id.* at 1213-14; *see Clement v. Gomez,* 298 F.3d 898, 905 (9th Cir. 2002) (a plaintiff must allege facts to support that "in light of the duties

TERMPSREF

assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy[]makers . . . can reasonably be said to have been deliberately indifferent to the need." (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989))).

Plaintiff does not allege any facts concerning any inadequate training or supervision, let alone allege facts to support that the training or supervision was the result of a deliberate or conscious choice by NaphCare.

In sum, Plaintiff fails to state a claim against NaphCare, and this Defendant will be dismissed.

### B.     Defendant Miller

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)).  In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment.  To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Plaintiff alleges that although Defendant Miller noted on June 12, 2024 that she planned to order a dermatology consultation, she did not order the consultation until September 9, 2024. Plaintiff's other allegations belie this assertion. The August 6, 2024 response to Plaintiff's formal grievance stated that Plaintiff had been scheduled for an ultrasound *and then* dermatology. Plaintiff underwent the ultrasound on August 28, 2024.

Plaintiff also claims Defendant Miller repeatedly delayed specialist referrals for dermatology and general surgery. Plaintiff asserts that Miller "acknowledged the standard of care previously prescribed was to remove the painful lesions," but Miller "refused to follow up on any plan of care." Again, Plaintiff's other allegations contradict these

assertions. Plaintiff first saw Miller on June 11, 2024, and the plan was a dermatology consultation and an ultrasound of Plaintiff's chest and abdomen. For reasons that are unclear, Plaintiff was sent to the emergency room that day. Plaintiff saw Miller a week later following the emergency room visit with the same plan of care, and Plaintiff received a notification stating, "General surgery cancelled," but, as noted, Plaintiff provides no detail regarding what the notification meant. Plaintiff did not see Miller again until August 28, 2024, when he underwent the ultrasound. Although the dermatology consultation Miller requested was cancelled in September 2024, nothing in Plaintiff's allegations suggests that Miller had any involvement in the cancellation. On October 16, 2024, Plaintiff underwent the CT scan of his abdomen and pelvis, as Miller had ordered. Subsequently, Miller ordered a urology consultation and again ordered general surgery and dermatology consultations. Plaintiff's allegations demonstrate that Miller responded to his serious medical needs with respect to evaluation and diagnosis of the abdominal masses.

Plaintiff alleges that he repeatedly reported to Defendant Miller that the pain medications were ineffective to treat his extreme pain, and Miller refused to prescribe any other medication for his pain. Accepted as true, these allegations are sufficient to warrant a response. *See Wilhelm v. Rotman*, 680 F.3d 1113 (9th Cir. 2012). The Court will require Defendant Miller to respond to this portion of the First Amended Complaint.

**IV.    Warnings**

    **A.    Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

    **B.    Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other

TERMPSREF

relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C.     Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections, Rehabilitation & Reentry Complex or Private Facility subject to General Order 23-19, Plaintiff can comply with Federal Rule of Civil Procedure 5(d) by including, with every document Plaintiff files, a certificate of service stating that this case is subject to General Order 23-19 and indicating the date the document was delivered to prison officials for filing with the Court. Plaintiff is not required serve Defendant with copies of every document or provide an additional copy of every document for the Court's use.

**If** Plaintiff is transferred to a facility other than one subject to General Order 23-19, Plaintiff will be required to: (a) serve Defendant, or counsel if an appearance has been entered, a copy of every document Plaintiff files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D.     Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)    Plaintiff's Motion to Exceed the Page Limit for Amended Complaint (Doc. 10 (Doc. 10) is **granted**.

(2)    The Clerk of Court **must file** the lodged proposed First Amended Complaint (lodged at Doc 11).

(3)    Defendant NaphCare is **dismissed** without prejudice.

TERMPSREF

- 14 -

(4) If Plaintiff attempts to amend to address the shortcomings identified in this Order, the amended complaint must be filed on the court-approved form and retyped or rewritten in its entirety (including those claims and Defendants that were not dismissed), and Plaintiff must comply with Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure.

(5) Defendant Miller must answer the portion of the First Amended Complaint that alleges that Miller failed to adequately respond to Plaintiff's complaints of pain.

(6) The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendant Miller.

(7) Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(8) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(9) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(10) The United States Marshal must notify Defendant of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure and Rule 4(j)(2) of the Federal Rules of Civil Procedure and Rule 4.1(c) of the Arizona Rules of Civil Procedure. The notice to Defendant must include a copy of this Order.

(11) If Defendant Miller agrees to waive service of the Summons and First Amended Complaint, Defendant must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged

TERMPSREF

the cost of personal service.

(12) The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

    (a) personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(13) Defendant Miller must answer the relevant portion of the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

TERMPSREF

(14)   This matter is referred to Magistrate Judge John Z. Boyle pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 5th day of June, 2025.

*James A. Teilborg*
Senior United States District Judge